# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,

Civ. No. 08-6437 (RHK/SRN)
**MEMORANDUM OPINION AND ORDER**

v.

Real Property and Premises Located at
216 Kenmore Avenue, Deerfield, Illinois, and
950 Bristol Drive, Deerfield, Illinois,

                    Defendant.

---

James S. Alexander, Assistant United States Attorney, Minneapolis, Minnesota, for Plaintiff.

Andrew M. Luger, David J. Wallace-Jackson, Greene Espel PLLP, Minneapolis, Minnesota, Shelly B. Kulwin, Kulwin, Masciopinto & Kulwin, LLP, Chicago, Illinois, for Claimants Russell and Abby Cole.

---

      This is an *in rem* forfeiture proceeding against two properties located in Deerfield, Illinois. Claimants in the properties, Russell and Abby Cole ("the Coles"), have filed a Motion to Dismiss the Amended Complaint insofar as it is alleged against one of the properties. The Government opposes the Motion and has separately moved to stay this action pending completion of related criminal proceedings against the Coles, in which forfeiture of the properties also is sought. For the reasons that follow, the Court will deny both Motions.

**BACKGROUND**

The relevant facts are set forth in the Affidavit of Postal Inspector Barry Bouchie, which is incorporated by reference in the Amended Complaint. (See Am. Compl. ¶ 11.) The Coles are principals in Chip Factory, Inc. ("Chip Factory"), a company that provided computer parts to Best Buy, Inc. ("Best Buy"), a Minnesota-based electronics retailer, from 2003 to 2007. (Bouchie Aff. ¶¶ 4-6.) According to the Affidavit, Robert Bossany, Best Buy's national parts buyer, conspired with the Coles and Chip Factory to defraud Best Buy out of at least $31 million. (Id. ¶ 4.)[1] During the pertinent timeframe, Chip Factory's income was derived "almost entirely" from Best Buy (id. ¶ 9), and the "vast majority" of the Coles's income during that time – nearly $14 million – came from Chip Factory (id. ¶ 10).

In September 2003, the Coles purchased a home at 950 Bristol Drive, Deerfield, Illinois, for $884,000. (Id. ¶ 15.) They later contracted with Bruce Greenberg and his company, Tailor Made Associates ("Tailor Made"), to renovate the property. (Id. ¶ 17.) Greenberg and Tailor Made were paid over $125,000 for the renovations, via checks written from Chip Factory's account at Cole Taylor Bank. (Id.) In July 2004, the Coles contracted with V&J Landscaping Service to lay a concrete driveway at the residence. (Id. ¶ 19.) At least one check issued to pay for that work came from the same Cole Taylor bank account. (Id.) Finally, from 2004 to 2007, the Coles paid nearly $70,000 in

---

[1] The manner in which the alleged conspiracy was carried out is set forth in greater detail in the Affidavit but is not repeated here, as it is not relevant to the present Motions.

property taxes on the property. (Id. ¶ 20.) The checks to pay those property taxes were written from their personal account at LaSalle Bank. (Id.) "Virtually all of the funds deposited into [that account] . . . constitute the proceeds of fraud." (Id.)

On December 15, 2008, the Government charged Bossany by felony information with conspiring to defraud Best Buy and money laundering. Shortly thereafter, the Government commenced the instant action, alleging that the Coles' property located at 216 Kenmore Avenue, Deerfield, Illinois, is subject to forfeiture. The Government later filed an Amended Complaint alleging that both the 216 Kenmore Avenue property and the 950 Bristol Drive property are forfeitable. The Coles timely filed a Notice of Claim in the properties pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules").

On July 20, 2009, a grand jury returned a 21-count Indictment against the Coles, alleging that they conspired to commit (and did commit) mail fraud, wire fraud, and money laundering. The Indictment also seeks forfeiture of the two properties named as Defendants in this action. The criminal case remains pending in this Court before the Honorable Michael J. Davis.

Invoking Supplemental Rule G(8)(b), the Coles have now filed a Motion to Dismiss the Government's forfeiture Complaint, insofar as it is alleged against the 950 Bristol Drive property (Counts 1 and 3). The Government has filed a Memorandum in

Opposition to that Motion and has separately filed a Motion to Stay. Both Motions are ripe for disposition.

## ANALYSIS

**I.      The Motion to Stay**

Invoking 18 U.S.C. § 981(g)(1), the Government seeks to stay this action pending completion of the criminal case. Section 981(g)(1) provides that "[u]pon motion of the United States, the court shall stay [a] civil forfeiture proceeding if [it] determines that civil discovery will adversely affect the ability of the government to conduct a related criminal investigation or the prosecution of a related criminal case." Hence, in order to obtain a stay, the Government must show that (1) discovery in this case will adversely affect the pending criminal action against the Coles and (2) the criminal action is "related" to this case.

The Court concludes that the Government has failed on the first prong – it has not shown that discovery in this action will adversely affect the criminal case. The Government claims it "*is concerned*" the Coles will obtain information through discovery in this case that they could not obtain in the criminal case. (Gov't Stay Mem. at 6 (emphasis added).) The Government also "anticipate[s]" the Coles "would assert the Fifth Amendment privilege against self-incrimination if it were to seek discovery from them." (Id. at 5 n.1.) This is not enough. "[T]he Government's arguments do nothing more than speculate about how civil discovery will adversely affect its criminal investigation." United States v. All Funds ($357,311.68) Contained in N. Trust Bank of

Fla. Account No. 7240001868, No. Civ. A. 3:04-1476, 2004 WL 1834589, at *2 (N.D. Tex. Aug. 10, 2004). The Government cannot discharge its burden by claiming that the discovery process could, theoretically, impair the criminal case. If that were true, a stay would be appropriate whenever requested by the Government in a civil-forfeiture action, since civil discovery is far broader than criminal discovery. Yet, "[t]here is no presumption that civil discovery, in itself, automatically creates an adverse affect on the government's related criminal proceeding." Id.; accord, e.g., United States v. Currency $716,502.44, No. 08-CV-11475, 2008 WL 5158291, at *4 (E.D. Mich. Dec. 5, 2008) ("Neither the fact that the Government would be subject to civil discovery, nor bare assertions of hardship by the Government, are enough to satisfy the statutory standard."). If Congress had intended such a result, it would have said so in the statute.

Nor does case law support the Government's argument. Courts that have granted stays generally fall into one of two categories. Some have done so when the parties served discovery requests before the Government sought the stay, permitting the court to assess the requests' impact on the related criminal proceeding. See, e.g., United States v. $1,730,010.00 in U.S. Currency More or Less, No. EP-06-CA-0406, 2007 WL 1164104, at *3 n.5 (W.D. Tex. Apr. 16, 2007); United States v. GAF Fin. Servs., Inc., 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004); United States v. All Funds Deposited in Account No. 200008524845, 162 F. Supp. 2d 1325, 1331 (D. Wyo. 2001).[2] Others have granted stays

---

[2] See also United States v. Funds Held in the Names or For the Benefit of Wetterer, 138 F.R.D. 356, 360-61 (E.D.N.Y. 1991); United States v. Leasehold Interests in 118 Ave. D,

where the Government submitted, *ex parte*, affidavits or other documents demonstrating that civil discovery might threaten to reveal confidential informants or would otherwise impair the criminal investigation.  See, e.g., Currency $716,502.44, 2008 WL 5158291, at *5; $1,730,010.00 in U.S. Currency, 2007 WL 1164104, at *2-3; United States v. Approximately $207,870.43 Seized from Certificates of Deposit at First Charter Bank & Shelby Sav. Bank, No. 3:07CV420, 2007 WL 4380064, at *1 (M.D.N.C. Dec. 12, 2007).[3] Neither has occurred here – there is nothing in the record indicating that discovery requests have been served by the parties, and the Government has not submitted *ex parte* an affidavit or other document explaining how or why civil discovery might impair the criminal case.  Notably, Section 981 expressly endorses the *ex parte* submission of materials demonstrating why a stay is appropriate.  See 18 U.S.C. § 981(g)(5) ("In requesting a stay . . . , the Government may . . . submit evidence *ex parte* in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.").  The Government's failure to avail itself of this procedure, in the Court's view, weakens its claim that civil discovery will impair the criminal case against the Coles.

For these reasons, the Court concludes that the Government has not satisfied its burden of showing that a stay is warranted under Section 981(g)(1).

---

Apartment 2A, 754 F. Supp. 282, 288 (E.D.N.Y. 1990).

[3] See also United States v. 10 Table Bluff Road, No. C 06-5256, 2007 WL 911849, at *2 (N.D. Cal. Mar. 23, 2007); GAF Fin., 335 F. Supp. 2d at 1373 & n.2; Account No. 200008524845, 162 F. Supp. 2d at 1331-32.

The Government also argues, however, that a stay is appropriate in order to prevent "unnecessary duplication of efforts." (Gov't Stay Mem. at 7.) Yet, the Government has cited no authority for the imposition of a stay on this basis. And even assuming that the Court enjoys the discretion to enter a stay, see Carlisle v. United States, 517 U.S. 416, 438 n.1 (1996) (district court has inherent power to stay proceedings "to control the progress of the cause so as to maintain the orderly processes of justice") (citation omitted), it would decline to exercise that discretion here. Little additional effort will be required to litigate this case beyond that expended in the criminal action, since forfeiture is sought in both cases. And because, under the Speedy Trial Act, it is likely that the criminal case will be resolved well before this action, any such additional effort will be minimal. Moreover, it is ironic that the Government seeks to avoid duplication of effort when it has chosen to proceed on two fronts, in this case and in the criminal case. The Government has an available tool to remedy this "problem": the voluntary dismissal of this action without prejudice, in favor of the criminal case. See Fed. R. Civ. P. 41(a).

For all the foregoing reasons, the Court will deny the Motion to Stay.

## II. The Motion to Dismiss

### A. Standard of review

Pursuant to Supplemental Rule G(8)(b)(i), a claimant who "contest[s] forfeiture may move to dismiss the action under Rule 12(b)" of the Federal Rules of Civil

Procedure.[4] In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court set forth the standard to be applied when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted). Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 1974. In determining whether a plaintiff has discharged this burden, a court must construe the complaint liberally, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65.

In the context of civil forfeiture proceedings, however, it is unclear whether, or to what extent, Twombly applies. Although Supplemental Rule G(8)(b)(i) expressly references Federal Rule of Civil Procedure 12(b), which was discussed in Twombly,

---

[4] "In civil forfeiture proceedings, both the Supplemental Rules, devised for admiralty and *in rem* proceedings, and the Federal Rules of Civil Procedure govern." United States v. Seventy-Nine Thousand Three Hundred Twenty-One Dollars, 522 F. Supp. 2d 64, 70 n.4 (D.D.C. 2007). The Supplemental Rules "are special provisions that overlay the Civil Rules," since they "are not comprehensive codes regulating every detail of practice." United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 149 (3d Cir. 2003). Accordingly, the Civil Rules apply, "but only to the extent that they are not 'inconsistent with' the Supplemental Rules." Id. (citation omitted).

Supplemental Rule G(8)(b)(ii) states that "[t]he sufficiency of the complaint is governed by Rule G(2)."  Supplemental Rule G(2), in turn, lists several items a forfeiture complaint must contain, including *inter alia* a description of the property to be forfeited, the location of the property, and "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Supplemental Rule G(2)(a)-(f).  There are no similar requirements in Federal Rule of Civil Procedure 8, which sets forth the pleading standard for civil actions to which the Supplemental Rules do not apply.  Hence, because the Supplemental Rules provide the standards against which a forfeiture complaint must be measured, it is questionable whether Twombly has any application here.  See United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 152 (3d Cir. 2003) (noting inconsistency between pleading standards under Supplemental Rules and Federal Rules).

Regardless of which standard applies, however, the Court will deny the Motion to Dismiss because it determines that the Amended Complaint satisfies both Supplemental Rule G(2) and Twombly.

**B.     Analysis**

The Coles seek dismissal of Counts 1 and 3 of the Amended Complaint, the two Counts concerning the 950 Bristol Drive property.  Each Count is discussed separately below.

Count 1.  Count 1 of the Amended Complaint seeks forfeiture under 18 U.S.C. § 981(a)(1)(C).  That statute provides, in pertinent part, that "[a]ny property, real or

personal, which constitutes or is derived from proceeds traceable to a violation of" certain criminal statutes (including those under which the Coles are charged here) is subject to forfeiture. The Coles contend that Count 1 should be dismissed because it alleges only that "a relatively small amount of tainted funds were used to renovate or otherwise maintain" the 950 Bristol Drive property. (Coles Mem. at 6.) In support, they cite several cases for the proposition that "the presence of one illegal dollar in an account does not taint the rest – as if the dollar obtained from fraud were like a drop of ink falling into a glass of water." (Id. at 7 (quoting United States v. Black, 526 F. Supp. 2d 870, 889 (N.D. Ill. 2007)).)

What the Coles ignore, however, is that the commingling of untainted funds with (allegedly) tainted funds does not shield the 950 Bristol Drive property from forfeiture. Rather, it simply limits the amount of the Government's forfeitable interest in the property. Although the Government does not contend that the property was originally purchased with the proceeds of fraud, it *does* allege that improvements to the property and property taxes were paid with illicit funds. And the law is well-established that the Government may seek forfeiture of the property in part, to the extent that tainted funds were used therein. See, e.g., United States v. 7725 Unity Ave. N., 294 F.3d 954, 958 (8th Cir. 2002); United States v. Rafferty, No. 04-20478-CR, 2007 WL 3231830, at *3 (S.D. Fla. Oct. 30, 2007); United States v. Loe, 49 F. Supp. 2d 514, 521 (E.D. Tex. 1999). Even the cases cited by the Coles recognize this principle. See, e.g., United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 639 (1st Cir. 1988) (real property purchased using

untainted funds for down payment was forfeitable to the extent tainted funds were used to make mortgage payments; "We agree that the interest acquired as a result of mortgage payments made with the proceeds of [illegal conduct] should be forfeitable."); United States v. 352 Northup St., 40 F. Supp. 2d 74, 78 (D.R.I. 1999) ("[T]he Government is entitled . . . to that portion of the property which it can demonstrate was acquired with tainted funds.").[5]

Nevertheless, the Coles argue that Count 1 should be dismissed because the Amended Complaint (and the Bouchie Affidavit incorporated therein by reference) does not adequately allege that the renovation and tax payments were made with tainted funds. They note that they possessed in 2003 significant untainted assets worth far more than these payments, assets "from which they could have easily funded" the renovations and taxes. (Coles Mem. at 10.) But this argument turns the Government's pleading obligation on its head. It does not matter where the Coles claim the money used for the payments came from. What matters is whether the Government *has sufficiently alleged in the Amended Complaint* that the money was derived from fraud. In other words, drawing all reasonable inferences in its favor, if the Government's allegations "support a reasonable belief that" the renovation and tax funds were tainted, then Count 1 passes muster, notwithstanding any arguments and evidence the Coles might later offer to the

---

[5] Admittedly, Count 1 alleges that the *entire* 950 Bristol Drive property is subject to forfeiture, but it is clear that the Government seeks to forfeit only "a portion" of that property. (Gov't Mem. in Opp'n at 21.) While Count 1 could have been pleaded more articulately, the Court will not dismiss it on this basis.

contrary. Supplemental Rule G(2)(f).

Viewed through this lens, it becomes clear that the Government has satisfied its obligation here. In particular, the Amended Complaint alleges that checks were written from Chip Factory's account at Cole Taylor Bank to pay for renovations to the property, and that other checks were written from the Coles' account at LaSalle Bank for property taxes. (Bouchie Aff. ¶¶ 17-20.) It further alleges that "[v]irtually all of the funds deposited into" the LaSalle Bank account were "the proceeds of fraud" (id. ¶ 20), and that the Chip Factory's income was derived "almost entirely" from defrauding Best Buy (id. ¶ 10). This is sufficient under Supplemental Rule G(2)(f).

When Supplemental Rule G(2)(f) was adopted in 2006, it was "intended to incorporate the standard imposed in forfeiture cases by the United States Court of Appeals for the Fourth Circuit in United States v. Mondragon, 313 F.3d 862 (4th Cir. 2002)." United States v. $15,740.00 in U.S. Funds, Civ. A. No. 5:07-375, 2008 WL 2227511, at *1 (M.D. Ga. May 27, 2008) (citing Supplemental Rule G 2006 advisory committee's note); accord, e.g., United States v. $50,040 in U.S. Currency, No. C 06-4552, 2007 WL 1176631, at *2-3 (N.D. Cal. Apr. 20, 2007). In Mondragon, the Fourth Circuit held that the Government must plead in a civil-forfeiture action "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." 313 F.3d at 865-67; see also United States v. U.S. Currency in the Amount of $150,660.00, 980 F.2d 1200, 1204-

05 (8th Cir. 1992) (endorsing same standard prior to adoption of Supplemental Rule G(2)(f)).

Here, the Court concludes that the Amended Complaint provides sufficient information to permit the Coles to undertake an investigation into the Government's allegations and frame a responsive pleading. In particular, it specifies (via the Bouchie Affidavit) the nature of the alleged fraud, including how the proceeds were obtained, the banks in which those proceeds were deposited, the manner in which the proceeds were spent, the approximate dates the checks spending those proceeds were written, and at least some of the check numbers at issue. This is enough detail to discharge the Government's burden under Supplemental Rule G(2)(f). See, e.g., United States v. $829,422.42 in U.S. Currency, No. 3:08CV914, 2009 WL 1743753, at *6 (D. Conn. June 18, 2009) (forfeiture complaint sufficient where it described money-laundering schemes and "state[d] that the bank account in the Claimant's name was involved in these schemes"); United States v. Contents of Nationwide Life Ins. Annuity Account No. 0961 in the Name of Steve E. Warshak, No. 1:05-CV-196, 2008 WL 1733130, at *3 (S.D. Ohio Apr. 10, 2008) (denying motion to dismiss forfeiture complaint that described the amount and source of funds sought and scheme to defraud); United States v. 2121 Kirby Drive, Civ. A. No. H-06-3335, 2007 WL 3378353, at *4 (S.D. Tex. Nov. 13, 2007) (complaint adequate where it "elucidate[d] the underlying offenses, the proceeds therefrom, and the substantial connection to the Defendant Properties").

By the same token, Count 1 of the Amended Complaint is sufficiently pleaded under Twombly. Taken as true, the allegations in the Amended Complaint establish that "virtually all" of the funds in the LaSalle Bank account were the proceeds of fraud, and that some of those funds were spent on property taxes for the Bristol Drive property. Similarly, it is alleged that nearly all of Chip Factory's income was derived from fraud, and some of its funds (from the Cole Taylor Bank account) were spent on renovations. While the Coles may be correct that there existed some untainted funds in these bank accounts, it is reasonable to infer that at least some tainted funds were used for renovations and property taxes, given the amount spent thereon – more than $100,000 for renovations and more than $60,000 for property taxes. Again, at this juncture it does not matter whether the Coles are correct that the challenged payments "could have" come from untainted funds they possessed in 2003. Rather, the question is whether the allegations in the Amended Complaint, accepted as true and drawing all reasonable inferences therefrom, are sufficient to "nudge" the Government's claims from "conceivable" to "plausible." Twombly, 127 S. Ct. at 1974. This is not a case like Twombly, where the allegations are *equally* susceptible to two interpretations, one which states a claim and one which does not. Given the amount and timing of the payments in question, the allegations here, albeit barely, suggest that at least some of the expenditures

for renovations and taxes involved tainted funds, rendering the property forfeitable, at least in part.[6] Hence, the claim is adequately pleaded.

Finally, even if the Coles were correct that the Amended Complaint lacks sufficient detail to connect the (allegedly) tainted funds to the expenditures at issue, dismissal would not be warranted. Supplemental Rule G(8)(b) provides that "[i]n an action governed by 18 U.S.C. § 983(a)(3)(D)[,] the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."[7] Hence, assuming *arguendo* that the Amended Complaint is deficient regarding the nexus between the alleged fraud and the renovation and tax payments, the Government still would be entitled to proceed with this action and later develop evidence that more strongly and directly connects them. See United States v. 630 Ardmore Drive, 178 F. Supp. 2d 572, 581 (M.D.N.C. 2001) ("[T]he Government's forfeiture claim can advance forward in [the] face of a . . . motion to dismiss even if the Government's Complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding.").

For all of these reasons, the Court will deny the Coles' Motion *vis-a-vis* Count 1.

---

[6] The Coles claim that they possessed significant untainted assets in 2003, but certain of the challenged payments occurred in 2005, 2006, and 2007. (See Bouchie Aff. ¶¶ 18, 20.) This temporal remoteness at least suggests that such payments came not from untainted assets, but rather from later, (allegedly) ill-gotten gains.

[7] The Coles argue that this Supplemental Rule does not apply because this action is not governed by 18 U.S.C. § 983(a)(3)(D). (See Coles Reply Mem. at 2.) They are mistaken. See United States v. 630 Ardmore Drive, 178 F. Supp. 2d 572, 580 n.5 (M.D.N.C. 2001) (noting that Section 983(a)(3)(D) applies to judicial forfeiture proceedings).

Count 3.  Count 3 of the Amended Complaint seeks forfeiture of the 950 Bristol Drive property under 18 U.S.C. § 981(a)(1)(A).  That statute, which is broader than the statute implicated in Count 1 (18 U.S.C. § 981(a)(1)(C)), provides in pertinent part that "[a]ny property, real or personal, involved in" a money-laundering transaction, or any property "traceable to such property," is subject to forfeiture.  There is no serious dispute that, by spending allegedly tainted funds on renovations and property taxes for 950 Bristol Drive, the property is "traceable to" a money-laundering offense.  See, e.g., United States v. Hawkey, 148 F.3d 920, 927 (8th Cir. 1998) ("[I]f Hawkey misappropriated $10,000 and used $5,000 of those funds to purchase a motorcycle, the motorcycle is 'traceable to' the [money-laundering] transaction and is, therefore, subject to forfeiture.").

Parroting their argument with respect to Count 1, however, the Coles argue that Count 3 should be dismissed because the allegations are insufficient to establish that the challenged payments came from tainted funds.  For the reasons set forth above, the Court rejects this argument.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Claimants' Motion to Dismiss (Doc. No. 10) is **DENIED** and that the Government's Motion to Stay (Doc. No. 19) is also **DENIED**.[8]

Dated: September 23, 2009

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[8] The Government's Motion to Stay is denied without prejudice to renewal, in the event it is later able (subject to Rule 11) to make a greater showing that this action will adversely affect the criminal case. See 18 U.S.C. § 981(g).